LUDWIG BAUMANN, Respondent, v. ELIZABETH MOSE- LEY, as Administratrix of JOSEPH B. ADAMSON, Appellant.

*Executors and administrators — a claim referred under the statute — review of the rulings on evidence and the findings — motion for a new trial upon a case and exceptions — must be made within a reasonable time — a referee's report as to a sale of chattels.*

A disputed claim against an estate was referred, under 2 Revised Statutes (88, 89, §§ 36, 37), and the referee made a report in favor of the plaintiff, which, though opposed by the defendant, was confirmed, and judgment was entered thereon upon March 6, 1891.

The defendant appealed from the judgment and from the order of confirmation, but afterwards, on December 7, 1891, made a motion in the first instance at Special Term, upon a case and exceptions, to set aside the report and for a new trial.

This motion was denied, and from that order the defendant appealed.

*Held,* that where a party desired to review the rulings upon evidence, and the question whether the evidence sustained the findings of fact, the proper method was to make a motion for a new trial upon a case and exceptions.

That such a motion might be made in a proceeding of this kind within a reasonable time after judgment.

That, upon the facts of this case, a delay from March to December was not unreasonable.

*Semble,* that a referee's report must be consistent in its legal propositions.

That, in the case of a sale of several chattels by a single contract, a report should not be sustained which, in effect, holds that the title had passed as to a part of the chattels, and that as to another part it had not passed.

APPEAL by the defendant Elizabeth Moseley, as administratrix of Joseph B. Adamson, deceased, from an order, entered in the office of the clerk of the county of New York on the 18th day of December, 1891, denying a motion made by the defendant to set aside the referee's report in this proceeding and for a new trial.

*II. L. Brant,* for the appellant.

*George Hahn,* for the respondent.

O'BRIEN, J.:

This was a special proceeding upon a disputed claim against the estate of Adamson, deceased, which was referred, pursuant to the statute, and tried before a referee. The latter reported in favor of the plaintiff as to a certain portion of the claim presented, which report, though opposed by the defendant, was confirmed, and judgment entered thereon on March 6, 1891. From this judgment, and the order confirming the referee's report, the defendant appealed to the General Term of this court. Thereafter, concluding that the better practice required that a motion should be made at Special Term, upon a case and exceptions, to set aside the report and for a new trial, the defendant made such motion on December 7, 1891, which was denied, and from such order of denial this appeal is taken.

As the question of practice thus presented is an important one, we will, at the outset, consider the contention made by the respondent, that the procedure adopted here of appealing from the order denying a motion for a new trial is not the correct practice; and even though it be so considered, that the motion upon the case and exceptions was made too late, not having been made within

thirty days, within which time the right to appeal from the judgment would have expired, and that, therefore, upon this ground alone, apart from the merits, the appeal should be dismissed.

As to the proper practice considerable confusion exists, and it is not our purpose to endeavor to reconcile the decisions which have been made relative thereto. But it becomes our duty rather, after an examination, to adopt the rules for which the stronger reasons and authorities can be found.

In *Eighmie* v. *Strong* (49 Hun, 18) it is said: "It is the customary and usual practice for the prevailing party to move at Special Term for a confirmation of the report. The motion being based upon the report, the only questions brought up for review are the regularity of the proceedings, and whether the conclusions of law are sustained by the findings of fact appearing in the report. The rulings made upon the hearing in the admission and rejection of evidence and questions as to whether the evidence sustains and justifies the findings of fact can only be brought up upon a case containing exceptions. It is the usual and customary practice for the defeated party to move upon a case containing exceptions for a new trial at the same time that the motion is made for a confirmation of the referee's report, so as to have all of the questions determined in the one motion, and this is, doubtless, the better practice. But we think the motion for new trial upon a case and exceptions may be made after the referee's report has been confirmed. Such has been the approved practice of our court, and we see no reason why it should be changed."

This view as to the proper practice is supported by numerous and well-considered authorities, and inasmuch as we approve of the practice as laid down in *Eighmie* v. *Strong*, it is unnecessary for us to discuss them. The most singular feature in connection with the entire practice is the failure of any of the cases to point out the authority in law, or by statute, for the practice of requiring that, where it is sought to review upon appeal rulings made upon the hearing as to the admission or rejection of evidence, or as to whether the evidence sustained the findings of fact, a motion for a new trial upon a case and exceptions must always be made in the first instance at the Special Term. As already stated, authorities can be found for an appeal directly from the judgment; and in *Hatch* v. *Stewart*

(42 Hun, 164), it is questioned whether the practice is not to appeal from the order of confirmation, and not from the judgment.

In *Smith* v. *Velie* (60 N. Y., 106), which is the only case to which our attention has been called in which the Court of Appeals has considered the question, that court was seemingly of the opinion that, where a disputed claim against the estate of a deceased person is referred pursuant to the statute, to preserve the right to review upon an appeal from the judgment entered upon the report of a referee the aggrieved party must move at Special Term upon a case, or otherwise, to set aside the report, or for a new trial, or must appear and oppose its confirmation and take the proper exceptions.

As already stated, the Code contains no provisions regulating the practice, and resort must be had to a solution made from what, under the authorities, would seem to be the practice most sanctioned and approved by the courts.

The absence of any provision of law as to the time within which a motion upon a case and exceptions must be made presents another difficulty arising on this appeal. The usual course is for the defeated party to move on a case and exceptions for a new trial at the time of the hearing of the motion for the confirmation of the report, and, if necessary, the hearing of the motion would be suspended to enable a case and exceptions to be made and prepared for the hearing. But such a motion may be made after the confirmation of the report, and after judgment has been entered. The question remains, how long after?

In this case the time to appeal from the judgment expired April, 6, 1891, while the notice of motion for a new trial was not served until November 27, 1891. Motions of this character in actions are controlled by section 1002 of the Code, which provides that they cannot be made unless notice therefor be given before the expiration of the time within which an appeal can be taken from the judgment. By section 1351 such time is limited to thirty days after service upon the attorney for the appellant of a copy of the judgment. Therefore, in actions, a motion upon a case and exceptions must be made within thirty days after notice of entry of judgment.

This section (1002), it has been held, refers entirely to motions in actions, and has no application to special proceedings. (*Denise* v. *Denise*, 41 Hun, 9.) That case is also authority for the proposition

that appeals from orders and judgments entered in special proceedings are regulated by sections 1356 and 1357 of the Code, and not by section 1346 thereof.

Section 1359, which fixes the limitation of time within which an appeal is to be taken as provided by sections 1356 and 1357, which control appeals from orders or judgments in special proceedings, provides that an appeal "must be taken within thirty days after service of a copy of the final order from which it is taken, with a written notice of the entry thereof upon the appellant."

Where, therefore, a motion is made for a new trial upon a case and exceptions and an order is entered thereon, the limitation of time to appeal is controlled by section 1359. But I have been unable to find any provision of the Code or any authority which determines when the motion itself must be made.

In the absence of authority or Code provision, we take it that the rule to be applied would require that such motion should be made within a reasonable time, and what is a reasonable time would necessarily depend upon the circumstances of the case. If we are correct in this view, we cannot say, upon the facts disclosed by this record, that the appellant unreasonably delayed making the motion, and having, within the time prescribed, taken his appeal from the order denying the same, and having originally appeared upon the motion to confirm the report and opposed the same, and having taken an appeal from the judgment entered thereon, we think that the merits of the appeal are before us for consideration.

So much of the facts as are necessary to dispose of the appeal may be briefly stated. The appellant, who is a furniture dealer, a few days prior to May 1, 1888, undertook to furnish a flat for the defendant's intestate, and delivered at the flat a portion of the goods between the 30th of April and the 5th of May, 1888, of the value of $1,400. The defendant's intestate, Adamson, died on the 3d of May, 1888, and notwithstanding this fact the plaintiff continued to deliver furniture on that and the two following days. Upon Adamson's death the landlord evicted his widow and took possession of the flat. The plaintiff having concluded, after inquiry, that the intestate's estate was insolvent, stopped the delivery of further goods and tried to recover possession of the goods already delivered, finally paying the landlord for the privilege of going into the premises

and taking the goods. The plaintiff took possession of the flat on May 7, 1888, and removed goods from time to time from May 10th to August 2, 1888. After such goods as were in the flat were taken away by plaintiff he claims to have discovered that certain furniture which had been delivered at the flat had either been lost or stolen while in the possession of the defendant's intestate.

The position then assumed by the plaintiff, and the claim sought to be enforced against the estate of the deceased, are thus set forth in the opinion of the referee:

"While the furniture was being placed in the apartments the purchaser died intestate. The plaintiff thereupon went to the flat and took possession of and removed all the goods that he could find. Most of the goods so removed he appraised and sold to a second-hand dealer at a loss, it is asserted, as compared with the contract-price, of $439.92. Besides this, $407.21 in value of the furniture had been stolen or taken from the flat, and the plaintiff was not able to recover possession of it. Plaintiff also performed work for Adamson about the same time of the value of thirty dollars and twenty-five cents, and also paid the landlord of the flat sixty dollars, being the amount of one month's rent of the flat, to enable the plaintiff to get possession of the goods without the trouble of a replevin. He also spent ten dollars and fifty cents in taking down poles and removing the goods. He now seeks to recover these various amounts from the administratrix of the intestate. * * *

"His conduct seems to have been founded upon the mistaken theory that his contract relations with Adamson were all abrogated by the death of the latter. The administratrix has not chosen to resist the rescission of the contracts, or to counter-claim damages, but has allowed the plaintiff to abrogate them as far as he was able so to do.

"I, therefore, feel constrained to disallow the claims of $439.92; of $10.50 and of $60.00, and find that the plaintiff is entitled to judgment for $407.21 and $30.25, with interest from November 21, 1889, besides costs."

It is impossible to reconcile the conclusions thus reached by the learned referee as to the goods that were retaken, and as to the goods alleged to have been lost or stolen.

As to the former, he held that the statute of frauds applied, and as to the latter, that it did not. In other words, as the statute required either a writing or part payment or delivery, and as no claim was made that there was any contract in writing, or that any money had been paid, it was necessary, in order to make title in the intestate of the property alleged to have been lost or stolen, that there should be an unconditioned delivery. Whether we regard the arrangement between the parties as a sale for "spot cash," which condition was waived, or a sale on credit, the test in many of the cases, as stated in Benjamin on Sales (§ 187), for determining whether there has been an actual receipt by the purchaser, has been to inquire whether the vendor has lost his lien. "As long as the seller preserves his control over the goods, so as to retain his lien, he prevents the vendee from accepting and receiving them as his own within the meaning of the statute."

To justify a retaking, the learned referee was obliged to hold that plaintiff had not lost his lien, that he had a right to rescind, and that the title had not passed, and yet to permit a recovery for articles lost or stolen he was compelled to hold that there was a complete delivery to satisfy the statute of frauds, and that title had passed, and that the vendor had lost his lien.

The contract of sale, whether entire or divisible, conditional or absolute as to its terms, was the same as affecting all the property, and as to so much of it as reached the flat, either the title passed or it did not. And it should be noticed that some of the property retaken, and some lost or stolen, were part of the same shipment or delivery, thus showing that there is no difference as respects terms of sale or title between the property retaken and the property lost or stolen.

The referee, as stated, in effect held that, as to property retaken, the title did not pass and the vendor had a right to rescind, but for the property lost or stolen the title did pass and the vendor could recover the value thereof.

If the goods never became Adamson's property, and he was merely a bailee, then, for the property lost or stolen, he would only be liable on proof of negligence.

If the title passed, then the retaking was unlawful and legally indefensible. For even if we assume a license in favor of the

vendor to retake the thing sold if not paid for, this would not be available against the administratrix. (*Howes* v. *Ball*, 7 B. & C., 484; Benjamin on Sales, § 188.)

The referee found that no claim for damages or loss, in connection with the reclaimed or retaken goods, could be allowed, thus recognizing the entirety of the contract and the effect of rescission thereof as regards these goods.

What reason exists in law or arises upon the facts to justify the application of any different rule to the goods not retaken? As already said, the goods were all sold and delivered under one and the same contract, the same in terms, if not an entire contract; and what was true as to one part of it was true as to each and every part.

We are aware, as contended by respondent, that, in law, upon the failure of a purchaser to perform a contract for the sale of personal property, the vendor may hold the property for the purchaser, and recover the entire purchase-money, or he may sell it and recover the difference between the contract-price and that realized upon the sale, or he may retain the property as his own and recover the difference between the contract-price and the market-price. All these relate to the remedy of the vendor as against a vendee who refuses to perform, and where the contract shows a sale to the vendee. No authority, however, can be found for allowing a vendor, who under the same terms of sale (even if the contract is not entire) at different times delivers property, to claim that the title to some of the property has passed, and to other articles that it has not passed. We do not think it necessary to discuss the subject further. Rights of parties and their obligations must be determined with some regard to consistency in principle. The inconsistent position of the referee, regardless of the other questions involved, requires that the judgment should be reversed and a new trial ordered, with costs to appellant to abide event.

VAN BRUNT, P. J., and PATTERSON, J., concurred in the result.

Judgment reversed and new trial ordered, with costs to appellant to abide event.